1
2
3

Cliff Cantor, WSBA # 17893
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074
(425) 868-7813

4

*Liaison Counsel for Plaintiffs*

5
6

[additional counsel on signature page]

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF WASHINGTON

9
10
11
12
13

In re IsoRay, Inc. Securities
Litigation

14
15
16

This document relates to:
All actions

Master File No. 4:15-cv-5046-LRS

**PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND
PLAN OF ALLOCATION**

March 7, 2017
With Oral Argument 10:30 a.m.
Yakima Courthouse

17
18
19
20
21
22
23
24

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................3

I.    OVERVIEW OF THE LITIGATION ...............................................6

II.   THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS
      FAIR, REASONABLE AND ADEQUATE TO THE CLASS ....................9

      A.    Standard ..............................................................9

      B.    All of the Relevant Factors Employed by Courts in This Circuit Favor
            Approval of the Proposed Settlement .................................11

            1.    Strength of Plaintiffs' Case, and the Risk, Expense, Complexity
                  and Likely Duration of Further Litigation ...............................11

                  a.    Difficulty of Proving Exchange Act Claims .................12

                        i.    Risk of Proving Falsity and Scienter....................12

                        ii.   Risk of Proving Loss Causation and Damages ....15

                  b.    Pragmatic Considerations ................................16

            2.    The Amount Offered in the Settlement Favors Approval ........19

            3.    Risk of Maintaining a Class Action .........................20

            4.    Stage of the Proceedings...........................................21

            5.    Experienced Counsel Concur that the Settlement, Which was
                  Negotiated in Good Faith and at Arm's-Length, is Fair,
                  Reasonable, and Adequate .......................................22

            6.    The Reaction of the Class Members to the Settlement.............24

III.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......25

IV.   CONCLUSION...............................................................26

PLS.' MOT. FOR FINAL APPROVAL
No. 4:15-cv-5046-LRS

- 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# TABLE OF AUTHORITIES

## Cases

*Aarons v. BMW of N. Am., LLC,*

 2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ................................ 15

*Browne v. Am. Honda Motor Co.,*

 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) ................................ 17

*City of Providence v. Aeropostale, Inc.,*

 2014 U.S. Dist. LEXIS 64517 (C.D. Cal. June 10, 2005) ................................ 12

*Ellis v. Naval Air Rework Facility*,

 87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................ 23

*Gebhart v. S.E.C.,*

 595 F.3d 1046 (9th Cir. 2014) ........................................................................ 13

*Hanlon v. Chrysler Corp.*,

 150 F.3d 1011 (9th Cir. 1998) .......................................................... 10, 19, 25

*In re Am. Apparel S'holder Litig.,*

 2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July, 28 2014) ....................... 14, 15

*In re Cathode Ray Tube Antitrust Litig.*,

 2016 U.S. Dist. LEXIS 24951 (N.D. Cal. Jan. 28, 2016) ......................... 23, 26

*In re Cendant Corp. Litig.*,

 264 F.3d 201 (3d. Cir. 2001) .......................................................................... 20

*In re Convergent Techs. Sec. Litig,*

 948 F.2d 507 (9th Cir. 1991). ......................................................................... 12

*In re Galena Biopharma, Inc., Sec. Litig.,*

 117 F. Supp. 3d 1145 (D. Or. Aug 5, 2015) ................................................... 13

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

*In re Global Crossing Sec. & ERISA Litig.*,

    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................... 26

*In re Heritage Bond Litig.*,

    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .......................... *passim*

*In re Ikon Office Solutions, Inc.*,

    194 F.R.D. 166 (E.D. Pa. 2000) .......................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) ............................................... 10, 19, 25

*In re NVIDIA Corp. SEC. Litig.*,

    768 F. 3d 1046 (9th Cir. 2014) ............................................ 13, 14

*In re NVIDIA Corp. Secs. Litig.*,

    2011 U.S. Dist. LEXIS 117807 .......................................................... 14

*In re Oracle Sec. Litig.*,

    1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) .......................... 26

*In re Pfizer Inc. Sec. Litig.*,

    2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July, 28, 2014) ........................ 15

*In re Syncor Litig.*,

    516 F.3d 1095 (9th Cir. 2008) .......................................................... 18

*In re TD Ameritrade Acc't Holder Litig.*,

    2011 U.S. Dist. LEXIS 103222 (N.D. Cal. Sept. 13, 2011) ........................ 22

*In re Warner Comm. Sec. Litig.*,

    618 F. Supp. 735 (S.D.N.Y. 1985) .......................................................... 15

*Linney v. Alaska Cellular P'ship*,

    1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) .......................... 11

LAW OFFICES OF

CLIFFORD A. CANTOR, P.C.

627 208th Avenue SE

Sammamish, Washington 98074-7033

Tel: (425) 868-7813 • Fax: (425) 732-3752

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998) ................................................................ 10, 11, 22

*National Rural Telecom. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 18, 21

*Nobles v. MBNA Corp.*,

    2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) ................................... 16

*Officers for Justice v. Civil Serv. Comm'n.*,

    688 F.2d 615 (9th Cir. 1982) ........................................................................ 10, 19

*Robbins v. Koger Props., Inc.*,

    116 F.3d 1441 (11th Cir. 1997) .......................................................................... 22

*Roberti v. OSI Sys., Inc.*,

    2015 U.S. Dist. LEXIS 164312 (C.D. Cal. Dec. 8, 2015) ............................ 11, 23

*Rodriguez v. West Publishing Corp.*,

    563 F.3d 948 (9th Cir. 2009) ............................................................................. 23

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993) ............................................................................... 18

*Varjabedian v. Emulex Corp.*,

    152 F. Supp. 3d 1226 (C.D. Cal. 2016) ............................................................. 14

*Viscaino v. U.S. District Court*,

    173 F.3d 713, 721 (9th Cir. 1999) ..................................................................... 21

## Other Authorities

Manual for Complex Litigation (Third) § 30.42 (1995) ................................... 23, 24

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1   Lead Plaintiffs Bodgan Ostrowski, Joseph Kavanaugh, and Patrick
2   McNamara ("Lead Plaintiffs") and named Plaintiffs Timothy Yuen and JM Zulueta
3   (collectively with Lead Plaintiffs, the "Plaintiffs"), through their undersigned
4   counsel, move for final approval of the proposed class action Settlement, as set forth
5   in the Stipulation of Settlement filed at ECF No. 86-1 (the "Stipulation").[1]

6   This Action will be settled for a cash payment in the amount of $3,537,500.
7   The proposed Settlement will inure to the benefit of investors in IsoRay, Inc.,
8   ("IsoRay") to settle their claims against Defendants. The Settlement results from
9   Plaintiffs' vigorous case prosecution and arm's-length settlement negotiations
10  between the parties.

11  ## I.   OVERVIEW OF THE LITIGATION

12  On May 22, 2015, this Litigation was filed as a class action on behalf of
13  purchasers of IsoRay securities. By Order dated August 17, 2015, this Court
14  appointed Bogdan Ostrowski, Joseph Kavanaugh, and Patrick McNamara as Lead
15  Plaintiffs and appointed The Rosen Law Firm, P.A. and Wolf Haldenstein Adler
16  Freeman & Herz LLP as Co-Lead Counsel ("Co-Lead Counsel"). ECF No. 39.
17  *See* Joint Declaration of Matthew M. Guiney and Phillip Kim, submitted herewith
18  ("Joint Decl.") at ¶ 4.

19  On October 16, 2015, Plaintiffs filed an Amended Complaint (the
20  "Complaint"), on behalf of purchasers of IsoRay common stock between May 20,
21  2015 and May 21 2015, inclusive (the "Settlement Class Period") against
22  Defendants. ECF No. 55. Joint Decl. at ¶ 5.

23  The Complaint seeks damages based on allegations that Defendants violated

24

---

[1]   Capitalized terms herein have the same meanings as in the Stipulation.

PLS.' MOT. FOR FINAL APPROVAL
No. 4:15-cv-5046-LRS                    - 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and that the Individual Defendant violated Section 20(a) of the Exchange Act. The Complaint alleges, *inter alia*, that Defendants knowingly and/or recklessly issued false and misleading statements in a company press release (the "Press Release") which misrepresented the findings of a clinical study (the "Study") concerning the effectiveness of IsoRay's Cesium 131 product in treating cancer by failing to disclose and discuss the performance of other treatment options that were compared in the Study. Joint Decl. at ¶ 6.

On December 15, 2015, Defendants filed a motion to dismiss in which they argued that, *inter alia*, (i) Plaintiffs failed to allege material false statements or particularized facts sufficient to give rise to a strong inference of Defendants' scienter; (ii) IsoRay did not have a duty to discuss the other treatment options in the Press Release, and (iii) Plaintiffs could not prove loss causation. ECF No. 61. On February 16, 2016, Plaintiffs filed their opposition to the motion to dismiss. ECF No. 65. On April 1, 2016, Defendants filed their reply. ECF No. 70.

On May 12, 2016, the parties appeared before the Court for a hearing on the motion to dismiss. On June 1, 2016 the Court issued an order denying the motion to dismiss. The same day, the Court issued a Notice setting a scheduling conference and directed the Parties to confer in advance of the status conference concerning a proposed discovery plan. ECF No. 75. Joint Decl. at ¶ 8.

The Parties met and conferred concerning a proposed discovery plan and submitted a proposed schedule, which the Court adopted by order on July 19, 2016. ECF No. 79. The Parties began the process of discovery in accordance with the discovery schedule, including propounding and responding to document requests,

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

issuing subpoenas to various non-parties, and receiving responses. This occurred prior to settlement discussions. Joint Decl. at ¶ 9.

On September 14, 2016, the Parties met with mediator Michelle Yoshida, Esq., in New York for an all-day mediation session. In advance of the mediation, the Parties held separate conference calls with Ms. Yoshida and exchanged mediation briefs outlining the Parties' respective positions and expert damages analyses. Joint Decl. at ¶ 10.

At the conclusion of the mediation, which included extensive negotiations by counsel, Ms. Yoshida made a mediator's proposal to settle the case for $3,537,500. Joint Decl. at ¶ 11. Pursuant to the mediator's proposal, the Parties reached an agreement-in-principle to settle the case. Since then, the Parties have negotiated and drafted the relevant settlement documentation. Joint Decl. at ¶ 11.

On October 3, 2016, Plaintiffs filed an unopposed motion for entry of order preliminarily approving settlement and establishing notice procedures. ECF No. 86. On October 20, 2016, this Court entered an order granting preliminary approval of the settlement and setting a calendar for distribution of notice to the Class along with briefing of and a hearing for final approval of the Settlement. ECF No. 87.

The parties have complied with the Court's preliminary approval order and its schedule for dissemination of the Notice, Summary Notice, and Proof of Claim. The Court-approved Claims Administrator — Strategic Claims Services — mailed the Notice and Proof of Claim by first-class mail, postage prepaid, on October 27, 2016, within the 28-calendar-day deadline that the Court set. Joint Decl. at ¶ 13. *See also* Exhibit C. Plaintiffs' Counsel and the Claims Administrator caused the Summary Notice to be published electronically on *GlobeNewswire* and in print in the

1   *Investor's Business Daily* on October 20 and 31, 2016, respectively, within the 10-

2   calendar-day deadline that the Court set. Joint Decl. at ¶ 14. *See also* Exhibit C.

3   To date, **not a single class member** has objected to any aspect of the

4   Settlement and only one class member has requested to be excluded from the

5   Settlement. Joint Decl. at ¶ 15. *See also* Exhibit C.

6   The Settlement is the product of a realistic assessment by knowledgeable and

7   experienced attorneys of the risks of further proceedings and the benefits that the

8   Class will obtain now. These risks include the inherent risks of proving falsity,

9   scienter, loss causation, and damages, and the risk that the Class will never collect

10   on any judgment it obtains. Joint Decl. at ¶ 16.

11   The Settlement also confers an immediate and substantial benefit on the

12   Settlement Class. Specifically, it provides a recovery of approximately 17.5% to

13   30% of the Class's estimated maximum damages amount. Joint Decl. at ¶ 17. The

14   Settlement also eliminates the risk, expense and uncertainty of continued litigation

15   under circumstances where a more favorable outcome was at risk. Joint Decl. at ¶ 17.

16   By any measure, the Settlement is fair, reasonable, and adequate, and is an excellent

17   result for the Class. Joint Decl. at ¶ 17.

18   ## II. THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE
19   IT IS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

20   ### A. Standard

21   Federal Rule of Civil Procedure 23(e) provides that "[t]he court must approve

22   any settlement, voluntary dismissal, or compromise of the claims, issues, or

23   defenses." In deciding whether to approve a proposed settlement, the Ninth Circuit

24   has a "strong judicial policy that favors settlements, particularly where complex

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Thus, in assessing the Settlement under Rule 23(e), the Court must only intrude upon what is otherwise a private consensual agreement negotiated among the parties to the extent necessary to reach a reasoned judgment that: (a) the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties; and (b) that the settlement taken as a whole is fair, reasonable, and adequate to all concerned. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [the trial judge] is exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

To avoid excessive intrusion into the parties' compromise, the court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625.

Rather, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

*Roberti v. OSI Sys., Inc.*, No. 13-9174, 2015 U.S. Dist. LEXIS 164312, *9 (C.D. Cal. Dec. 8, 2015) (quoting *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 24300, *16 (N.D. Cal. July 18, 1997)).

As explained below, the Settlement was reached after extensive investigation and litigation by experienced counsel on both sides, and then only after protracted arms'-length negotiations. Under these circumstances, the Settlement has the presumption of fairness.

### B. All of the Relevant Factors Employed by Courts in This Circuit Favor Approval of the Proposed Settlement

To determine whether a proposed settlement is fair, reasonable, and adequate, a court must examine the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the risk of maintaining class status through trial; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242. These factors all support approval of the proposed Settlement.

### 1. Strength of Plaintiffs' Case, and the Risk, Expense, Complexity and Likely Duration of Further Litigation

While Plaintiffs survived Defendants' motion to dismiss, to succeed in establishing liability Plaintiffs would have to prove both that IsoRay's May 20, 2015 Press Release was false and/or misleading *and* that Defendants acted with scienter in issuing the alleged false and misleading aspects of the Press Release.

The claims in this action were brought under Section 10(b) and 20(a) of the

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

Securities Exchange Act of 1934 ("Exchange Act") under the theory that Defendants materially misrepresented the results of the Study by touting those results in a press release in an incomplete and materially misleading fashion.

### a.  Difficulty of Proving Exchange Act Claims

In addition to the general risks of any litigation, a heightened risk existed because this Action is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which significantly raised the standard for investors to successfully prosecute securities class actions. "[S]ecurities class actions are … notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale, Inc.*, No. 11-7132, 2014 U.S. Dist. LEXIS 64517, *14 (S.D.N.Y. May 9, 2014) (internal quotation marks omitted); *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555, *25 (C.D. Cal. June 10, 2005) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

### i.  Risk of Proving Falsity and Scienter

Obtaining a favorable jury finding on the elements of falsity and scienter is hardly a foregone conclusion. In order to establish falsity, Plaintiffs would have to demonstrate that the Press Release conveyed a false or misleading impression, based upon the information that was then available to the market. *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991). While Plaintiffs were successful in establishing this at the motion to dismiss stage, Defendants invariably would have asserted a "truth-on-the-market" defense at trial, arguing that the allegedly omitted information that Plaintiffs argued rendered the Press Release misleading was already available given the publication of the Study and the abstract

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1    before the issuance of the Press Release. While Plaintiffs are confident that a jury

2    would not credit this affirmative defense, there are of course no guarantees.

3        In order to establish scienter, Plaintiffs must show "that defendants knew

4    their statements were false," or "that defendants were reckless as to the truth or

5    falsity of their statements." *In re Galena Biopharma, Inc., Sec. Litig.*, 117 F. Supp.

6    3d 1145, 1163 (D. Or. 2015) (quoting *Gebhart v. S.E.C.*, 595 F.3d 1034, 1041 (9th

7    Cir. 2010)). Recklessness must be either "'deliberate recklessness' or 'conscious

8    recklessness,' and . . . it includes a 'subjective inquiry' turning on 'the defendant's

9    actual state of mind.'" *Id.* (quoting *S.E.C. v. Platforms Wireless Int'l Corp.*, 617

10   F.3d 1072, 1093 (9th Cir. 2010)). Deliberate or conscious recklessness in this

11   context is:

12          a highly unreasonable omission, involving . . . an extreme departure from
13          the standards of ordinary care, and which presents a danger of misleading
14          buyers and sellers that is either known to the defendant or is so obvious that
            the actor must have been aware of it. [Additionally,] the danger of
15          misleading buyers must be actually known or so obvious that any
16          reasonable man would be legally bound as knowing.

17   *Id.* (quoting *In re NVIDIA Corp. Sec. Litig.*, 768 F. 3d 1046, 1053 (9th Cir. 2014)).

18       Ultimately, the question "is whether defendant knew his or her statements

19   were false, or was consciously reckless as to their truth or falsity." *Gebhart*, 595

20   F.3d at 1042. Defendants' mere negligence will be insufficient to prove securities

21   fraud without proof of either knowledge or recklessness.

22       While Plaintiffs believe they have strong claims, securities fraud cases are

23   difficult to prove:

24       In the Ninth Circuit, to successfully plead scienter based on an omission, a

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Varjabedian v. Emulex Corp.*, 152 F. Supp. 3d 1226 (C.D. Cal. 2016) (*quoting Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (internal quotation marks and original ellipses omitted).

This standard has been characterized as "extremely difficult to meet, because even clear misconduct does not always raise a strong inference of scienter." *Id.* (*citing In re NVIDIA Corp. Sec. Litig.*, No. 08-4260, 2011 U.S. Dist. LEXIS 117807, *36 (N.D. Cal. 2011), *affirmed, In re NVIDIA Corp.*, 769 F.3d 1046). For instance, in *In re NVIDIA Corp. Sec. Litig.*, the District Court noted there was no strong inference of scienter even when a company knew of a significant product defect and failed to disclose it to investors because "such behavior, at worst, reflects recklessness in the ordinary sense of the word." 2011 U.S. Dist. LEXIS 117807, *8. Proving scienter is particularly difficult when there is no insider selling while the stock price was inflated as a result of the alleged misrepresentations. *See In re Am. Apparel S'holder Litig.*, No. 10-6352, 2014 U.S. Dist. LEXIS 184548, *28 (C.D. Cal. July 28. 2014).

Plaintiffs were tasked with the difficult challenge of proving scienter with respect to Defendants' omissions and misrepresentations. In fact, Defendants argued and would have continued to argue that Plaintiffs could not prove scienter because, among other things, Defendants had provided a link to the Study in the Press Release itself. Although not an insurmountable burden, Plaintiffs did acknowledge the risk in meeting a difficult standard in settlement of this Action.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

### ii.    Risk of Proving Loss Causation and Damages

Plaintiffs would also have had to prove loss causation — i.e., that it was the revelation of the fraud that caused the price of IsoRay's stock to fall, and that the Settlement Class suffered damages as a result. These elements can only be proven through expensive, complex, and risky expert testimony. *In re Pfizer Inc. Sec. Litig.*, No. 04-9866, 2014 U.S. Dist. LEXIS 92951, **19, 20 (S.D.N.Y. July 8, 2014) (entering summary judgment in favor of defendants after excluding Plaintiffs' experts on damages pursuant to *Daubert*); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. 10-6352, 2014 U.S. Dist. LEXIS 184548, *94 (C.D. Cal. July 28, 2014) (plaintiffs must turn to experts to disaggregate losses from nonactionable and actionable factors).

Defendants would retain their own experts, who would testify that other factors caused IsoRay's stock price collapse. In this "battle of experts," it is virtually impossible to predict which testimony would be credited and, ultimately, which damages would be found to have been caused by actionable rather than nonactionable factors such as general market conditions. *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); *see also Aarons v. BMW of N. Am., LLC*, No. 11-7667, 2014 U.S. Dist. LEXIS 118442, *26 (C.D. Cal. Apr. 29, 2014) ("battle of the experts" are "inherently risky").

Although Plaintiffs are confident there are minimal loss causation issues in this matter, there is still risk inherent in the battle of experts that would ensue. Defendants argued and would have continued to argue that IsoRay's stock price ***did not*** react to the publication of the Study itself and that the Study was already available to the marketplace when the Press Release and subsequent Feuerstein

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

article were published. Plaintiffs have given due consideration to these risks in settling this Action.

### b.    Pragmatic Considerations

Continued litigation would be risky and expensive. Regardless of the ultimate outcome, there is no question that further litigation would be expensive and complex. It is widely acknowledge that class-action litigation is inherently complex. *See, e.g.., Nobles v. MBNA Corp.*, No. 06-3723, 2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Courts recognize that securities class actions, in particular, are typically complex and expenses to prosecute. *See, e.g., Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555. This securities action is no exception.

For class certification, Plaintiffs would have had to procure expert opinions on market efficiency (as would Defendants). Class certification would have involved continued discovery including expert depositions, briefing, and argument. Joint Decl. at ¶ 18.

With respect to merits discovery, the Parties could anticipate — given the complexities of the issues — reviewing thousands of documents and taking a substantial number of depositions, including depositions of Defendants, Defendants' personnel, and personnel involved with the Study, as well as third-parties involved with the Study. Following the close of merits discovery, Plaintiffs would have to procure expensive and complex expert testimony to prove loss causation and damages. Joint Decl. ¶ 19. The Parties would engage in expert discovery on those issues. Defendants would present their own expert testimony to

PLS.' MOT. FOR FINAL APPROVAL
No. 4:15-cv-5046-LRS

- 16 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

demonstrate that the alleged stock drop was not proximately caused by the revelation of the fraud, and/or attempt to demonstrate that at least a portion of the alleged stock drop was attributable to other things unrelated to the revelation of the fraud. Joint Decl. ¶ 20. Consequently, expert discovery and trial preparation would be expensive and complex. *See Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (class actions have a well-deserved reputation as being the most complex).

The likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. Even if a class had been certified and Plaintiffs withstood Defendants' likely motion for summary judgment, continued prosecution of the action would be complex, expensive, and lengthy with a more favorable outcome than the Settlement highly uncertain. *See Browne v. Am. Honda Motor Co.*, No. 09-6750, 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources. There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

After trial, any appeal would have to be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation. Thus, the present value of a cash recovery at this time, as opposed to the mere chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the risk that the Settlement Class could receive no recovery.

At this point, over twenty months into the Litigation, Plaintiffs are aware of the strengths and weakness of their case. Despite the perceived strength of Plaintiffs' case, the risk, expense, complexity, and likely duration of further

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

litigation clearly support approval of the Settlement. *See In re Syncor Litig.*, 516 F.3d 1095 (9th Cir. 2008) (finding the district court abused its discretion in granting defendants' summary judgment motion after the parties notified the court of entering into a binding class action settlement); *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Additionally, a defendant's strained financial condition supports approval, and indeed "predominate[s]" over other factors. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (financial condition of the Company "predominated" over other factors in favor of settlement); *see also In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000.

Defendants' financial condition counsels in favor of settlement. IsoRay has a market cap of approximately $32 million with a 200-day Moving Average of $0.69 per share and a 50-day Moving average of $0.60 per share. According to its most recent 10-Q, the Company has cash and cash equivalents of $8.4 million. Defendants' only major asset is its Cesium-131 brachytherapy seed, which has been approved by the FDA and can be prescribed for the treatment of cancers. Even if Plaintiffs had received a judgment for the maximum amount of damages years down the road that had survived the inevitable appeals, it is uncertain how much of that judgment Plaintiffs would be able to collect on.

The Settlement provides for recovery of $3,537,500, which is 17.5% of Plaintiffs' maximum estimated damages. The Settlement confers an immediate, reasonable, and valuable cash benefit to the Class — one that negates the very real

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1  risks to recovery posed by continued litigation.

2              **2.      The Amount Offered in the Settlement Favors Approval**

3          The determination of a "reasonable" settlement is not susceptible to a

4  mathematical equation yielding a particularized sum. Nor is the proposed

5  Settlement "to be judged against a hypothetical or speculative measure of what

6  might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625.

7  As "[s]ettlement is the offspring of compromise[,] the question we address is not

8  whether the final product could be prettier, smarter or snazzier, but whether it is

9  fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the

10 agreement reached normally embodies a compromise; in exchange for the saving

11 of cost and elimination of risk, the parties each give up something they might have

12 won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. In

13 fact, a settlement may be acceptable even if it amounts to only a fraction of the

14 potential recovery that might be available at trial. *See Mego*, 213 F.3d at 459.

15        Co-Lead Counsel engaged a consultant to assist in estimating potentially

16 recoverable damages. Estimating damages can be challenging due to, among other

17 things, assumptions that must be made regarding trading activity. The estimate of

18 potential maximum recoverable damages, assuming that Plaintiffs prevailed on *all*

19 claims and overcame *all* defenses, was at most approximately $20.3 million. Joint

20 Decl. ¶ 21. But that number would be reduced or eliminated entirely if the Court or

21 jury accepted some or all of Defendants' defenses, including their claims that a

22 portion or all of the losses are attributable to causes other than the alleged

23 misstatements or omissions. Had the case been tried, there was a fair possibility that

24 the damages could have been lower or even zero. *See, e.g., Heritage Bond Litig.*,

PLS.' MOT. FOR FINAL APPROVAL
No. 4:15-cv-5046-LRS                              - 19 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

2005 U.S. Dist. LEXIS 13555, *26 (citing *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (where the court recounted several instances where settlement was rejected by a court only to have the recovery generated by continued litigation ultimately be less than the proposed settlement)).

Defendants' payment of $3,537,500 in cash to the Class constitutes 17.5% of Plaintiffs' maximum estimated damages and is an outstanding result for the Class. Indeed, settlements valued at a substantially similar or much lower percentage of possible damages are routinely approved. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses). *See* Joint Decl. at Ex. D (excerpts from Svetlana Starykh and Stefan Boettsich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* (NERA 25 Jan. 2016) at 33, Fig. 29 (the median ratio of settlements between 1996 and 2015 to investment losses was 8.6% for cases alleging investor losses of between $20 and $49 million); at 34, Fig. 30 (the median ratio of settlements to investor losses in 2015 was 1.6%)).

Here, the recovery provides an immediate and tangible benefit to the Settlement Class, and is well within a range of reasonableness in light of the best possible recovery and the substantial risks presented by the litigation. The 17.5% recovery as a percentage of damages is approximately double the median percentage in cases of comparable size. Joint Decl. ¶ 22.

### 3.   Risk of Maintaining a Class Action

The Settlement Class has been preliminarily certified for settlement purposes only. If not for this Settlement, Defendants would have strongly contested class certification and, if certified, would have sought every opportunity to have the class

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1    de-certified. Rule 23(c)(1) expressly provides that a class certification order may be

2    "altered or amended before final judgment." *See, e.g., Viscaino v. U.S. District*

3    *Court*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or

4    amended "before the decision on the merits").

5         Because maintaining a class action to judgment is an expensive and risky

6    enterprise, a fair and reasonable settlement is preferable to years of uncertainty. *See*

7    *Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *26 ("[i]n most situations,

8    unless the settlement is clearly inadequate, its acceptance and approval are

9    preferable to lengthy and expensive litigation with uncertain results") (citing

10   *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

11   2004) (internal quotation omitted)).

12        Because the scope of a class-wide judgment is a greater detriment to

13   Defendants than an individual action, even after an adjudication on the merits, the

14   risk of ultimately not prevailing remains high. *See, e.g., National Rural*, 221 F.R.D.

15   at 527 (if a class action obtains a successful judgment, an appeal is likely to follow);

16   *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997 (jury verdict

17   of $81 million for plaintiffs against an accounting firm reversed on appeal).

18                        **4.    Stage of the Proceedings**

19        Plaintiffs had sufficient information to evaluate their case and to assess the

20   propriety of a settlement. Here, by the time the Settlement was reached, Plaintiffs

21   and Co-Lead Counsel had the benefit of: (a) an extensive investigation; (b) this

22   Court's opinion on Defendants' motion to dismiss; (c) consultation with market

23   efficiency and damages experts; (d) third-party discovery; and (e) adversarial

24   mediation briefing, discussions at the mediation, and the mediator's evaluation of

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

the merits. Joint Decl. ¶¶ 23.

The parties need not have engaged in more extensive formal discovery as long as they have engaged in sufficient investigation of the facts to enable the parties and the Court to intelligently make an appraisal of the Settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement). *In re TD Ameritrade Acc't Holder Litig.*, No. 07-2852, 2011 U.S. Dist. LEXIS 103222 (N.D. Cal. Sep. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery).

Plaintiffs and Co-Lead Counsel were in an excellent position to evaluate the strengths and weaknesses of their allegations against Defendant, and the defenses raised thereto, as well as the substantial risks of continued litigation, and to be in a position to conclude that the Settlement provides a fair, adequate, and reasonable recovery, and is in the best interests of the Class. *Roberti*, No. 13-9174, 2015 U.S. Dist. LEXIS 164312, *9 (C.D. Cal. Dec. 8, 2015) (similar stage of proceedings weighs in favor of final approval).

### 5. Experienced Counsel Concur that the Settlement, which Was Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable, and Adequate

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). *Accord*, *In re Cathode Ray Tube Antitrust Litig.*, No. 07-5944, 2016 U.S. Dist. LEXIS 24951, **222-23 (N.D. Cal. Jan. 28, 2016) (citing *Ellis v. Naval Air Rework*

PLS.' MOT. FOR FINAL APPROVAL
No. 4:15-cv-5046-LRS

- 22 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

*Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.")).

A "presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *26 (citing *Manual for Complex Litigation (Third)* § 30.42 (1995)).

This case has been litigated by experienced and well-respected counsel on both sides. Indeed, Plaintiffs' Counsel has been litigating on behalf of IsoRay investors since mid-2015, Plaintiffs' Counsel is intimately familiar with the strengths and weaknesses of the case and the core facts, and wholeheartedly recommends this Settlement as fair, reasonable, and adequate. Indeed, Plaintiffs' Counsel believes that the Settlement is an excellent result for the Class. *See* Joint Decl. ¶ 24.

Co-Lead Counsel has many years of experience in litigating securities class actions throughout the country — including within this Circuit and District in particular — and in assessing the respective merits of each side's case. Joint Decl. ¶ 25, Exs. A & B (Co-Lead Counsel's firm résumés). Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and highly respected counsel at Wilson Sonsini, a top nationally and internationally regarded firm with solid experience in defending securities class actions. Joint Decl. ¶ 26. Defendants' counsel brought considerable experience and expertise to bear and vigorously defended this Action.

In the face of this knowledgeable and formidable defense, Co-Lead Counsel

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

were nonetheless able to develop a case that was sufficiently strong to tentatively overcome the heightened pleading standard of the PSLRA, and persuade Defendants and their insurance carriers to settle on terms that are favorable to the Settlement Class. That Co-Lead Counsel recommend the settlement in these circumstances is entitled to a presumption of correctness.

Lead and Named Plaintiffs also support the Settlement. Joint Decl. ¶ 27 and Exs. F-J. This is additional evidence that the Settlement is fair, reasonable, and adequate. Under the PSLRA, the Lead Plaintiffs' support for a settlement should be accorded "special weight because [the Lead Plaintiffs] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting *Manual for Complex Litigation (Third)* § 30.44 (1995)). Lead Plaintiffs' support favors Court approval.

Further, the Settlement was brokered with the aid of a professional mediator, Michelle Yoshida, Esq. The parties engaged in hard-fought negotiations over the course of a full-day, with Co-Lead Counsel, defense counsel, and Defendants' representatives and insurance carriers. The negotiations were in good faith and at arms'-length. Though professional, the discussions were zealous and even heated; there was no collusion. Joint Decl. at ¶ 28. As a result of these long and hard-fought negotiations, the parties agreed to the settle this Action for $3,537,500. Only after these protracted and good faith negotiations did the parties finally agree to all the terms of the settlement reflected in the Stipulation. Joint Decl. at ¶ 29.

### 6. The Reaction of the Class Members to the Settlement

Pursuant to the Court's Notice Order, over 12,000 notices were sent to Class Members to date and Summary Notice was published in *Investors' Business Daily*

on October 31, 2016. Joint Decl. at ¶ 30. The deadline to exclude oneself from the settlement is February 4, 2017 and the deadline to object to the settlement is February 15, 2017. Joint Decl. at ¶ 31. To date, only one request for exclusion and **no objections** have been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement. *Id.* "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon,* 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 458.

## III.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *26. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). *See also In re Cathode Ray Tube*, 2016 U.S. Dist. Lexis 88665, **223-24.

"A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *In re Oracle Sec. Litig.*, No. 90-931, 1994 U.S. Dist. LEXIS 21583, *3 (N.D. Cal. June 18, 1994). *See also In re Cathode Ray Tube*, 2016 U.S. Dist. Lexis 88665, * 25 ("[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.").

The proposed Plan of Allocation was fully described in the Notice sent to the Class, at pages 4-6. It was formulated by Lead Counsel, in consultation with an

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

independent damages expert, with the goal of reimbursing Class members in a fair and reasonable manner. Each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, $3,537,500 plus interest, less attorneys' fees and expenses). The Plan of Allocation does not discriminate between Class Members. In short, the Plan of Allocation has a rational basis and fairly compensates Class Members. This Court should approve it.

## IV.    CONCLUSION

Because the Settlement and the Plan of Allocation are fair, reasonable, and adequate, Plaintiffs respectfully request that the Court enter the Proposed Final Order and Judgment finally approving the Settlement as fair, reasonable and adequate.

DATED: January 31, 2017                Respectfully submitted,

LAW OFFICES OF
  CLIFFORD A. CANTOR, P.C.
*s/ Cliff Cantor*
Cliff Cantor, WSBA # 17893
627 208th Ave. SE
Sammamish, WA 98074
Tel:    (425) 868-7813
Fax:    (425) 732-3752
Email:  cliff.cantor@outlook.com

*Liaison Counsel for Plaintiffs*

THE ROSEN LAW FIRM, P.A.
*s/ Philip Kim*
Laurence M. Rosen
Phillip Kim (admitted *pro hac vice*)
Sara Fuks (admitted *pro hac vice*)
275 Madison Avenue, 34th Floor
New York, NY 10016
Tel:    (212) 686-1060-2610

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1

Fax:     (212) 202-3827
Email:  lrosen@rosenlegal.com

2

pkim@rosenlegal.com
sfuks@rosenlegal.com

3

*Lead Counsel for Plaintiffs*

4

5

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP

6

*s/ Matthew M. Guiney*
Matthew M. Guiney (admitted *pro hac vice*)

7

270 Madison Ave.
New York, NY 10016

8

Tel:     (212) 545-4600

9

Email:  Guiney@whafh.com

10

*Lead Counsel for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Certificate of Service**

I certify that, on the date stamped above, I caused this document to be filed with the Clerk of the Court using the CM/ECF system, which will cause notification of filing to be emailed to all parties via their counsel of record.

s/ Cliff Cantor, WSBA # 17893

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752